**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Conservation Law Foundation, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>A.D. Makepeace Company; ADM Agawam Development LLC; ADM Management Corporation; and Read Custom Soils, LLC,<br><br>Defendants. | Case No. 1:26-cv-13813<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES** |

## INTRODUCTION

1. A.D. Makepeace Company, along with its companies, ADM Agawam Development LLC, ADM Management Corporation, and Read Custom Soils LLC (collectively, "Defendants"), unlawfully degrade and destroy wetlands and streams without a required Clean Water Act ("CWA") permit.

2. A.D. Makepeace is the largest private landowner in Massachusetts and owns about 12,000 acres of land in Massachusetts. The majority of the land, over 10,000 acres, is primarily dedicated to sand mining and real estate development. Only 1,750 acres are cranberry bogs.

3. A.D. Makepeace describes itself on its website first and foremost as "a recognized leader in environmentally responsible real estate development and stewardship." A.D. MAKEPEACE, https://admakepeace.com/ (last visited Aug. 17, 2026), https://perma.cc/Z8DW-XTS8.

4. As sand prices have risen and cranberry prices have fallen, Defendants' sand mining operations have accelerated.

5. For years, Defendants have discharged, and continue to discharge, dredged and fill material into navigable waters of the United States located at or near: 24 Federal Road/0 Golden Pond Road, Carver ("Smith-Hammond Bogs"); 46 Federal Road, Carver ("Wankinco Bogs"); Wareham Road, Plymouth ("White Island Bogs"); and 0 Wihonet (Off East Head Wihonet and Tihonet Road), Plymouth ("Canning Bogs") (collectively, the "Sites"), without the required Section 404 permit.

6. Defendants' discharges of dredged and fill materials at the Sites have impacted over two-thousand linear feet of perennial streams and over a hundred acres of wetlands adjacent to those perennial streams.

7. Plaintiff Conservation Law Foundation's ("CLF") members hike alongside these waters, view threatened and endangered species such as birds and turtles that inhabit these areas, and receive drinking water from the underlying Plymouth Carver Sole Source Aquifer ("Sole Source Aquifer"). Defendants' damage and destruction of these waters diminishes CLF's members' recreational and aesthetic enjoyment of the area and threatens CLF's members' health by diminishing the quality of the drinking water from the Sole Source Aquifer.

8. This is an action for declaratory and injunctive relief and civil penalties brought by CLF pursuant to the citizen suit provision of the CWA, 33 U.S.C. § 1365, against Defendants for violations of Section 404 of the CWA, 33 U.S.C. § 1344.

9. Section 404 of the CWA prohibits the discharge of dredged or fill material into waters of the United States without a permit issued by the U.S. Army Corps of Engineers ("Corps"). 33 U.S.C. § 1344.

10. This is a public interest lawsuit, not a suit for damages. Plaintiff seeks a declaration that Defendants have violated and continue to violate Section 404 of the CWA; injunctive relief

ending Defendants' unpermitted discharges and requiring restoration of the affected lands; civil penalties; and an award of attorney's fees and litigation costs.

## JURISDICTION, VENUE, AND NOTICE

11. Plaintiff brings this civil suit under the citizen suit provision of Section 505 of the CWA, 33 U.S.C. § 1365.

12. This Court has subject matter jurisdiction over the parties and this action pursuant to Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), and 28 U.S.C. § 1331 (an action arising under the Constitution and laws of the United States).

13. On June 19, 2026, Plaintiff notified Defendants and their agents of its intention to file suit for violations of the CWA, in compliance with the statutory notice requirements of Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), and the implementing regulations, 40 C.F.R. § 135.2.

14. A true and accurate copy of Plaintiff's Notice Letter ("Notice Letter") is appended as Exhibit 1. The Notice Letter is incorporated by reference herein.

15. Each Defendant received the Notice Letter. A copy of each return receipt is included in the appended Exhibit 2.

16. Plaintiff also sent copies of the Notice Letter to the Administrator of the United States Environmental Protection Agency ("EPA"), the Regional Administrator of the EPA for Region 1, the Citizen Suit Coordinator of the Environment and Natural Resources Division Law and Policy Section, and the Commissioner of the Massachusetts Department of Environmental Protection ("MassDEP").

17. Each of the addressees identified in the preceding paragraph received the Notice Letter. A copy of each return receipt is included in the appended Exhibit 2.

18. More than sixty days have elapsed since Plaintiff mailed its Notice Letter, during which time neither the EPA nor the Commonwealth of Massachusetts commenced an action to address the violations alleged in this Complaint. 33 U.S.C. § 1365(b)(1)(B).

19. The CWA violations alleged in the Notice Letter relating to the Sites are of a continuing nature, ongoing, and reasonably likely to recur. As of the date of the filing of this Complaint, Defendants remain in violation of the CWA at the Sites.

20. Venue is proper in the United States District Court for the District of Massachusetts pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the sources of the violations are located within this judicial district.

## PARTIES

Plaintiff

21. Plaintiff CLF is a nonprofit, member-supported, regional environmental advocacy organization dedicated to protecting New England's environment.

22. For over 60 years, CLF has worked to protect the health of New England's water resources, including by bringing actions under the CWA and advocating to protect wetlands, streams, and other waters from unlawful dredging, filling, and destruction.

23. CLF has over 8,000 members, including over 3,400 members in Massachusetts.

24. CLF members have observed and experienced the deterioration and loss of perennial streams, ponds, and wetlands caused by Defendants' unpermitted discharges. As a result, CLF members' recreational and aesthetic enjoyment of these waters has diminished.

25. CLF's members live near the Sites and receive drinking water from the Sole Source Aquifer beneath the Sites. Defendants' unpermitted discharges negatively impact the drinking water quality of the Sole Source Aquifer region by disrupting natural filtration and purification.

26. CLF's members have received lower quality drinking water, have incurred costs to install additional personal filtration systems, and are concerned about continued impacts to local drinking water and the harms to which they have been and may be exposed.

Defendants

27. Defendants A.D. Makepeace Company ("A.D. Makepeace") and ADM Management Corporation ("ADM Management") are incorporated under the laws of Massachusetts.

28. There is common control between Defendants A.D. Makepeace and ADM Management, which share identical corporate officers.

29. Defendants ADM Agawam Development LLC ("ADM Agawam") and Read Custom Soils LLC ("Read") are limited liability companies organized under the laws of Delaware.

30. Defendant Read is a subsidiary of A.D. Makepeace.

31. Defendants ADM Agawam and Read are managed by James Kane, who is the Chief Executive Officer for A.D. Makepeace and ADM Management.

32. All Defendants share the same registered agent and business address.

33. Collectively, Defendants are liable for all violations of the CWA alleged in this Complaint.

34. Defendants have conducted and continue to conduct mining operations at each of the Sites.

35. Defendants' mining activities at each Site have included and continue to include clearing forested land of trees and vegetation, leveling hills, removing earth materials (such as sand, gravel, and topsoil), and dredging the underlying Sole Source Aquifer.

36. Defendants have removed and continue to remove materials from each of the Sites for commercial sale.

37. Defendants have used and continue to use excavators, bulldozers, and front-end loaders to move the material excavated from their mining operations, including soil, sand, gravel, aggregate, stumps, and debris, and discharge that material into wetlands and perennial streams at each of the Sites.

38. A.D. Makepeace owns and has owned the Smith-Hammond Bogs since at least 2019.

39. A.D. Makepeace and Read participate in and exercise control over the operations and activities at the Smith-Hammond Bogs.

40. A.D. Makepeace is responsible for ensuring that the operations at the Smith-Hammond Bogs are in compliance with the CWA.

41. A.D. Makepeace owns and has owned the Wankinco Bogs since at least 2012.

42. A.D. Makepeace and Read participate in and exercise control over the operations and activities at the Wankinco Bogs.

43. A.D. Makepeace is responsible for ensuring that the operations at the Wankinco Bogs are in compliance with the CWA.

44. ADM Management operates the White Island Bogs.

45. ADM Agawam owns and has owned the White Island Bogs since at least 2006.

46. ADM Agawam, ADM Management, and Read participate in and exercise control over the operations and activities at the White Island Bogs.

47. ADM Agawam is responsible for ensuring that the operations at the White Island Bogs are in compliance with the CWA.

48. A.D. Makepeace owns and has owned the Canning Bogs since at least 2015.

49. A.D. Makepeace and Read participate in and exercise control over the operations and activities at the Canning Bogs.

50. A.D. Makepeace is responsible for ensuring that the operations at the Canning Bogs are in compliance with the CWA.

51. Read mines, excavates, extracts, dredges, and discharges the sand, gravel, and earth materials at the Sites.

52. The CWA defines "person" to include any "corporation, partnership, [or] association." 33 U.S.C. § 1362(5). A.D. Makepeace, ADM Agawam, ADM Management, and Read are "persons" within the meaning of the CWA. *Id.*

## STATUTORY AND REGULATORY BACKGROUND

53. The objective of the CWA is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a) (1972).

54. Section 301(a) of the CWA prohibits "the discharge of any pollutant by any person" except as in compliance with the CWA. 33 U.S.C. § 1311(a).

55. Under the CWA's implementing regulations, the "discharge of a pollutant" is defined as "[a]ny addition of any 'pollutant' or combination of pollutants to navigable waters from any 'point source.'" 40 C.F.R. § 122.2; *see also* 33 U.S.C. § 1362(12).

56. The word "pollutant" is defined by the CWA to include "dredged spoil," "solid waste," "chemical wastes, biological materials," "rock, sand, [and] cellar dirt," and "agricultural waste," among other types of waste. 33 U.S.C. § 1362(6).

57. The CWA creates two permitting programs: the National Pollutant Discharge Elimination System ("NPDES") established by Section 402 of the CWA, 33 U.S.C. § 1342, and the "dredge and fill" or "404" permit program created by Section 404 of the CWA, *id.* § 1344. NPDES permits authorize and regulate point source discharges of pollutants (e.g., effluent from a

wastewater treatment plant or factory), whereas Section 404 permits authorize and regulate discharges of dredged or fill material to navigable waters, including coastal waters and wetlands.

58. The CWA defines navigable waters as "the waters of the United States" ("WOTUS"). 33 U.S.C. § 1362(7).

59. WOTUS includes, among other waters, waters currently used, used in the past, or susceptible to use in interstate or foreign commerce, including waters subject to the ebb and flow of the tide; relatively permanent, standing or continuously flowing tributaries of those waters; wetlands adjacent to those waters, as well as wetlands having a continuous surface connection to relatively permanent impoundments or tributaries; and relatively permanent intrastate lakes and ponds having a continuous surface connection to such waters or tributaries. 33 C.F.R. § 328.3(a)(1)(i), (3)–(5). For purposes of this definition, "adjacent" means "having a continuous surface connection." *Id.* § 328.3(c)(2).

60. The CWA defines dredged material as any "material that is excavated or dredged from WOTUS." 33 C.F.R. § 323.2(c).

61. Fill material is any material, excluding garbage, that when placed into WOTUS "has the effect of replacing any portion of a [WOTUS] with dry land; or changing the bottom elevation of any portion of a [WOTUS]." 33 C.F.R. § 323.2(e)(1).

62. "Examples of such fill material include, but are not limited to: rock, sand, soil, clay, plastics, construction debris, wood chips, overburden from mining or other excavation activities, and materials used to create any structure or infrastructure in the waters of the United States." 33 C.F.R. § 323.2(e)(2).

63. A discharge of fill material is "the addition of fill material" into WOTUS. 33 C.F.R. § 323.2(f). A discharge of dredged material includes "[a]ny addition, including redeposit other

than incidental fallback, of dredged material, including excavated material, into waters of the United States which is incidental to any activity, including mechanized land clearing, ditching, channelization, or other excavation." 40 C.F.R. § 232.2.

64. "Point source" is defined broadly to include "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, [or] conduit . . . from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

65. An activity involving a discharge of dredged material "destroys" WOTUS if it alters the area so that it would no longer constitute WOTUS, and "degrades" such waters if it has more than a de minimis effect by causing an identifiable individual or cumulative adverse effect on an aquatic function. 33 C.F.R. § 323.2(d)(4)–(5).

66. Unauthorized discharges do not eliminate CWA jurisdiction even where they destroy the affected waters. 33 C.F.R. § 323.2(d)(4).

## CITIZEN ENFORCEMENT OF THE CWA

67. The CWA authorizes citizen enforcement actions "against any person . . . who is alleged to be in violation of . . . an effluent standard or limitation . . . or an order issued by the Administrator or a State with respect to such a standard or limitation." 33 U.S.C. § 1365(a)(1).

68. An effluent standard or limitation includes "an unlawful act under" Section 301(a) of the CWA, 33 U.S.C. § 1311(a). 33 U.S.C. § 1365(f)(1).

69. The discharge of dredged or fill material into waters of the United States without authorization under Section 404 is an unlawful act under Section 301(a) and an "effluent standard or limitation" enforceable through a citizen suit under Section 505 of the CWA. 33 U.S.C. §§ 1311(a), 1344(a), 1365(a)(1), (f)(1).

70. Each separate violation of the CWA subjects the violator to a penalty of up to $68,445 per day, the maximum amount allowed pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d), 1365(a). *See also* 40 C.F.R. §§ 19.1–19.4.

## **DEFENDANTS' VIOLATIONS OF THE CWA**

71. Defendants' violations of the CWA occurred at four Sites: Smith-Hammond Bogs, Wankinco Bogs, White Island Bogs, and Canning Bogs.

Smith-Hammond Bogs

72. The Smith-Hammond Bogs Site is located on a portion of a 336.5-acre parcel identified by the Town of Carver Assessor as Map 131 Lot 1-3, with a street address of 24 Federal Road/0 Golden Pond Road. Exhibit 3.

73. The Smith-Hammond Bogs Site lies within the Agawam River/Frontal Buzzards Bay sub-watershed designated by the EPA's MyWaterway database as watershed number 010900020304.

74. The perennial stream at the Smith-Hammond Bogs Site (hereinafter referred to as the "Smith Stream") flows into the Wankinco River, which flows into the Wareham River and then into Buzzards Bay. The Smith Stream is connected to tidal waters by a continuous surface connection.

75. The Smith Stream was connected to a now-filled unnamed pond and unnamed bog.

76. The Smith Stream is a WOTUS because it is a perennial stream with a continuous surface connection to tidal waters.

77. Wetlands adjacent to the Smith Stream at the Smith-Hammond Bogs Site are WOTUS because they share a continuous surface connection to the Smith Stream.

78. Figure 1: Smith-Hammond Bogs, 2003 vs. 2024 shows an overview of Defendants' alterations to the Smith-Hammond Bogs Site:

2003 2024




*Fig. 1:* Google Earth, *Smith-Hammond Bogs*, (2003 & 2024), https://bit.ly/4bVkHrT.

79. At the Smith-Hammond Bogs Site, Defendants discharged dredged and fill material into perennial streams and wetlands with a continuous surface connection to the Smith Stream.

80. Defendants discharged dredged or fill material into at least 575 linear feet of perennial stream, including the Smith Stream, and at least 58.5 acres of wetlands at the Smith-Hammond Bogs Site.

81. Upon information and belief, Defendants have not applied for a permit from the Corps to discharge dredged or fill materials into WOTUS at the Smith-Hammond Bogs Site.

82. The Corps has not issued a Section 404 permit to Defendants authorizing the discharge of dredged or fill materials into WOTUS at the Smith-Hammond Bogs Site.

<u>Wankinco Bogs</u>

83. The Wankinco Bogs Site is located within an approximately 538-acre parcel identified by the Town of Carver Assessor as Map 131, Lot 2-4, with a street address of 46 Federal Road. Exhibit 3.

84. The Wankinco Bogs Site lies within the Agawam River/Frontal Buzzards Bay sub-watershed designated by the EPA's MyWaterway database as watershed number 010900020304.

85. The Wankinco Bogs Site included a perennial stream (referred to herein as the "Wankinco Stream," alternatively spelled Wankinko) that, prior to Defendants' unpermitted dredging and filling, connected to the Wankinco River.

86. The Wankinco River flows through Tihonet Pond and into the Wareham River, and then into Buzzards Bay.

87. The Wankinco River, Tihonet Pond, the Wareham River, and the Wankinco Stream are WOTUS.

88. Wetlands adjacent to the Wankinco Stream at the Wankinco Bogs Site are WOTUS because they share a continuous surface connection to the Wankinco Stream.

89. Figure 2: Wankinco Bogs, 2003 vs. 2024 shows an overview of Defendants' alterations to the Wankinco Bogs Site:

2003 2024




*Fig. 2:* Google Earth*, Wankinco Bogs*, (2003 & 2024), https://bit.ly/45zr4xn.

90. At the Wankinco Bogs Site, Defendants discharged dredged or fill material into perennial streams and wetlands with a continuous surface connection to the Wankinco Stream.

91. Defendants discharged dredged or fill material into at least 115 linear feet of perennial stream, including the Wankinco Stream, and at least 2.8 acres of wetlands at the Wankinco Bogs Site.

92. Upon information and belief, Defendants have not applied for a permit from the Corps to discharge dredged or fill materials into WOTUS at the Wankinco Bogs Site.

93. The Corps has not issued a Section 404 permit to Defendants authorizing the discharge of dredged or fill materials into WOTUS at the Wankinco Bogs Site.

White Island Bogs

94. The White Island Bogs Site is located on a parcel of land identified by the Town of Plymouth Assessor as Map 115-000-000A-049, with a street address of 2 River Run Way. Exhibit 3.

95. The White Island Bogs Site lies within the Red Brook-Frontal Cape Cod Canal sub-watershed designated by the EPA's MyWaterway database as watershed number 010900020303.

96. The wetlands at the White Island Bogs Site are connected to White Island Pond. White Island Pond is connected to Red Brook, which then connects to Buzzards Bay.

97. White Island Stream, White Island River, Red Brook, and Buzzards Bay are WOTUS.

98. Wetlands adjacent to White Island Pond are WOTUS because they share a continuous surface connection to White Island Pond.

99. Figure 3: White Island Bogs, 2003 vs. 2026 shows an overview of Defendants' alterations to the White Island Bogs Site:

2003 2026




*Fig. 3:* Google Earth, *White Island Bogs*, (2003 & 2026), https://bit.ly/4bPmKh6.

100. At the White Island Bogs Site, Defendants discharged dredged or fill material into perennial streams and wetlands with a continuous surface connection to White Island Pond.

101. Defendants discharged dredged or fill material into at least 560 linear feet of perennial stream and at least 39.5 acres of wetlands at the White Island Bogs Site.

102. Upon information and belief, Defendants have not applied for a permit from the Corps to discharge dredged or fill materials into WOTUS at the White Island Bogs Site.

103. The Corps has not issued a Section 404 permit to Defendants authorizing the discharge of dredged or fill materials into WOTUS at the White Island Bogs Site.

<u>Canning Bogs</u>

104. The Canning Bogs Site is located on a parcel of land identified by the Town of Plymouth Assessor as Map/Lot 126-000-007-003, with a street address of 0 Wihonet (Off East Head Wihonet and Tihonet Road). Exhibit 3.

105. The Canning Bogs Site lies within the Agawam River/Frontal Buzzards Bay sub-watershed designated by the EPA's MyWaterway database as watershed number 010900020304.

106. Prior to Defendants' unpermitted dredging and filling, the Canning Bogs Site contained a perennial stream (hereinafter referred to as the "Canning Stream") that flowed through the bogs and into the Wankinco River.

107. The Wankinco River flows into the Wareham River, which flows into Buzzards Bay.

108. The Canning Stream, the Wankinco River, the Wareham River, and Buzzards Bay are WOTUS.

109. Wetlands adjacent to the Canning Stream are WOTUS because they share a continuous surface connection to the Canning Stream.

110. Figure 4: Canning Bogs, 2003 vs. 2024 shows an overview of Defendants' alterations to the Canning Bogs Site:

2003 2024




*Fig. 4:* Google Earth*, Canning Bogs*, (2003 & 2024), https://bit.ly/4gCKlUQ.

111. Defendants dammed the Wankinco River by installing flume and/or weir devices at the Canning Bogs Site.

112. The Defendants' flume and/or weir devices alter the Wankinco River by manipulating the flow, velocity, and elevation of the water, and prevent navigation in this portion of the river.

113. At the Canning Bogs Site, Defendants discharged dredged and fill material into wetlands with a continuous surface connection to the Canning Stream, Wankinco River, Wareham River, and Buzzards Bay.

114. Defendants discharged dredged or fill material into at least 1,350 linear feet of perennial stream and at least 29 acres of wetlands at the Canning Bogs Site.

115. Upon information and belief, Defendants have not applied for a permit from the Corps to discharge dredged or fill materials into WOTUS at the Canning Bogs Site.

116. The Corps has not issued a Section 404 permit to Defendants authorizing the discharge of dredged or fill materials into WOTUS at the Canning Bogs Site.

**DEFENDANTS' UNPERMITTED DISCHARGES HARM CLF'S MEMBERS.**

117. Defendants' unpermitted discharges at each of these Sites have caused and continue to cause injuries to WOTUS, including the streams, wetlands, and ecosystems at the Sites, and to CLF members' use and enjoyment of the Sites and surrounding environment.

118. CLF members live, recreate, travel, and observe wildlife near the waterbodies affected by Defendants' activities, including Wareham River, Buzzards Bay, Wankinco River, Tihonet Pond, Red Brook, and Weweantic River.

119. CLF's members use and enjoy the streams and wetlands of Massachusetts, including those at each of the Sites, for recreational and aesthetic purposes, including but not limited to hiking alongside those waters, enjoying the view shed of those waters and the surrounding areas, and observing wildlife that inhabit those waters and the surrounding areas, including the federally-endangered Plymouth Red-bellied turtle, and dozens of species of birds, including rare species such as the Whip-poor-will, Prairie Warbler, and Eastern Towhee.

120. CLF's members have observed the loss of aquatic and wetland-dependent species due to reduced aquatic and wetland habitat, fragmented wildlife corridors, and diminished feeding, breeding, nesting, and nursery areas.

121. Defendants' unpermitted discharges at each of the Sites have also caused and continue to cause injuries to the Sole Source Aquifer, the groundwater beneath the Sites, which is the drinking water source for up to 200,000 people in the Sole Source Aquifer region, including CLF's members.

122. The damage and destruction to the Sole Source Aquifer's natural systems caused by Defendants' unpermitted discharges result in increased pollution of the Sole Source Aquifer's water. CLF's members must either incur additional financial costs to secure cleaner water or expose themselves to the health risks of drinking the polluted water.

123. CLF's members are also concerned about the general impacts of wetland loss in their local community due to Defendants' unpermitted wetland filling activities. CLF's members are concerned about the potential health and environmental effects that result from loss of wetlands, such as reduced natural water storage, pollutant filtration, groundwater protection, streamflow connection, erosion control, and flood protection.

## COUNT ONE: UNPERMITTED DISCHARGE OF POLLUTANTS

124. Plaintiff incorporates all allegations in the above paragraphs into each count below as though fully set forth herein.

125. In light of Defendants' history of violations, and absent court-ordered relief, Defendants will continue to violate the following provisions of the CWA unless and until enjoined from doing so.

126. Upon information and belief, Plaintiff expects that discovery will reveal additional violations and information about the violations described in this complaint.

127. Defendants did not obtain an individual permit from the Corps to discharge dredged or fill material into waters of the United States at the Smith-Hammond Bogs Site, Wankinco Bogs Site, White Island Bogs Site, or Canning Bogs Site, nor did Defendants obtain coverage under a regional or nationwide general permit.

128. Defendants unlawfully discharged dredged or fill material from a point source into WOTUS at the Smith-Hammond Bogs Site, Wankinco Bogs Site, White Island Bogs Site, and Canning Bogs Site without a Section 404 permit.

129. Each day that Defendants discharge dredged or fill material without a permit, and each day that the material remains in place, constitutes a separate and distinct violation of Sections 301(a) and 404(f)(2) of the CWA at the Smith-Hammond Bogs Site, Wankinco Bogs Site, White Island Bogs Site, and Canning Bogs Site.

130. Defendants' violations of Sections 301(a) and 404(f)(2) of the CWA are ongoing and continuous, and barring an order to restore the Smith-Hammond Bogs Site, Wankinco Bogs Site, White Island Bogs Site, and Canning Bogs Site to their pre-violation conditions, these violations will continue indefinitely.

## **RELIEF REQUESTED**

Wherefore, Plaintiff CLF respectfully requests that this Court grant the following relief:

(a) Issue a declaratory judgment, pursuant to 28 U.S.C. § 2201, that Defendants have violated and remain in violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and applicable regulations, as alleged in this Complaint;

(b) Enjoin Defendants from violating Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and the applicable Clean Water Act regulations;

(c) Order Defendants to implement measures to remedy, mitigate, or offset the environmental harm caused by the violations alleged above, correct all identified violations, and demonstrate full regulatory compliance;

(d) Determine the number of days of violation of the Clean Water Act committed by Defendants;

(e) Impose civil penalties on Defendants for each day of violation of the Clean Water Act, as provided under Sections 309(d) and 505(a) of the Clean Water Act, 33 U.S.C. §§ 1319(d) and 1365(a), and its implementing regulation 40 C.F.R. § 19.4;

(f) Award Plaintiff's costs of litigation, including reasonable attorney and expert witness fees, as provided under Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d); and

(g) Grant such other relief as this Court may deem appropriate.

Dated: August 18, 2026

Respectfully submitted,

CONSERVATION LAW FOUNDATION, INC.,

By its attorneys:
*/s/ Lewis DeHope*
Lewis DeHope, MA Bar No. 714196
Heather A. Govern, MA Bar No. 688482
Phoebe DeMeerleer, RI Bar No. 10791
*Pro hac vice motion to be filed*
Conservation Law Foundation, Inc.
62 Summer Street, Boston, MA 02110
ldehope@clf.org
hgovern@clf.org
pdemeerleer@clf.org
(617) 850-1792

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2026, the foregoing document was filed through the ECF system, by which means a copy of the filing will be sent electronically to all parties registered with the ECF system.

*/s/ Lewis DeHope*
Lewis DeHope